[No. F007502. Fifth Dist. Jan. 6, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
EARNIE McGHEE, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

---

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II through V.

**COUNSEL**

Tony L. Cogliandro, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, J. Robert Jibson and Gelacio L. Bayani, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BEST, J.**—Defendant was convicted by jury of sale of methamphetamine in violation of Health and Safety Code section 11379. He was sentenced to the state prison for the upper term of four years. In addition, the trial court imposed a restitution fine of $10,000, the maximum fine provided for under Government Code section 13967. Defendant challenges both his conviction and the imposition of the maximum restitution fine. We affirm.

### THE FACTS

Howard Eggert, a California Highway Patrol traffic officer, was assigned to the Kings County Narcotics Task Force in Hanford as a special investi-

gator. On December 23, 1985, about noon, Officer Eggert, who was working undercover at the time, was introduced to defendant by a confidential informant as being interested in purchasing "crank" (methamphetamine). The meeting took place in a trailer home located at 1907 Dairy Avenue in the City of Corcoran.[1] Eggert talked with defendant for about 10 minutes. Defendant, who was introduced as "Earnie," told Eggert that he had only two quarter-grams of crank left. Because Eggert wanted one gram, he told defendant he would be back for a gram at $60.

On December 31 about noon, Eggert returned to the trailer home where he first met defendant. He knocked on the door and defendant answered. Eggert told defendant he had come to buy a gram of crank. Defendant responded that he had sold out all of his stock, but said he would go to Fresno to pick up some more.

Eggert returned at 4 p.m. the same day (Dec. 31), the time defendant told him he would be back from Fresno. A woman answered the door, but shortly thereafter defendant showed up at the door and let Eggert in. After proceeding to the bedroom, Eggert asked defendant to tell the woman, who had followed them, to leave the room. Defendant did so and she left. Defendant shut the door and weighed out on a scale a white powdery substance, which defendant had poured from a 35-millimeter film cannister. Defendant then put the powder in two plastic containers and sealed them. Eggert handed $60 to defendant in exchange for two plastic containers. Before leaving, Eggert told defendant he would be coming back to purchase one-eighth ounce of crank for $150.

Jerome Massetti, a criminalist with the crime lab of the California Department of Justice in Fresno, analyzed the contents of the two plastic containers and found it to be methamphetamine.

Defendant, who did not testify, presented an alibi defense. His evidence, if believed, would have established that he was not the person introduced to Officer Eggert on December 23 and could not have participated in the drug sale on December 31.

Defendant's cousin, Buddy McGhee, and his teenage daughter, Melanie, testified that on December 23 about 10:30 a.m., they, along with Buddy's two other children, met defendant at Randy Tudor's trailer home after which defendant took the three children to his parents' home for Christmas gifts. Fred and Rita McGhee, defendant's parents, both testified that on

---

[1] Randy Tudor owned said trailer home, which was three spaces away from the trailer home of Barbara Alvidrez, defendant's girlfriend.

December 23, defendant and the three children arrived at their house between 10:30 and 11 a.m., that they had dinner about noon, and they left about 2 p.m. They also said that at no time between defendant's arrival 10:30 a.m. and his departure about 2 p.m. did he ever leave the house.

The defense evidence further showed that on December 31 about 4 p.m., the time of the drug sale, defendant was in Sacramento. Tana Smith said she, defendant and her one-year-old daughter started out early on December 31 on their way to Disneyland, but on the way she changed her mind and asked defendant if they could go visit her father in Sacramento instead, to which defendant agreed. Ms. Smith stated that she and defendant, along with her little daughter, stayed in Sacramento in her father's house for three days. Defendant's girlfriend, Barbara Alvidrez, stated that defendant, who spent the night with her on December 30, was up early on December 31 and borrowed her car. She said defendant did not come back with the car for three days.

On rebuttal, Officer Eggert stated that even after listening to the testimony of defendant's alibi witnesses, there was no doubt in his mind that the person he met on December 23 and who sold him drugs on December 31 was defendant.

Officer Harold Spuhler, a correctional officer with the Kings County Sheriff's Department, stated that on July 1, 1986, during a break following the testimony of 10-year-old Melanie McGhee, he commented to defendant as they were walking along that Melanie was a cute girl. Defendant's response was, "Yes, she's a cute little girl, but she got her story all mixed up."

### DISCUSSION

### I

*Did the trial court improperly impose a $10,000 fine for a $60 sale of contraband?*

■ Defendant acknowledges that in *People* v. *Romero* (1985) 167 Cal.App.3d 1148, 1156 [213 Cal.Rptr. 774], this court held that a trial court is not required to state reasons for imposing a restitution fine pursuant to Government Code section 13967 and Penal Code section 1202.4, but argues that the $10,000 fine was not warranted under the circumstances of this case and that the instant fine was not actually a fine but a "built-in parole violation." This court rejected the "built-in parole violation" argument in *People* v. *Long* (1985) 164 Cal.App.3d 820, wherein we held: "[T]here is nothing in the laws as discussed herein to suggest that the parole board, at

the time of defendant's release, would be obligated or inclined to condition his parole upon payment of the restitution fine. The restitution fine has already been imposed as part of a court order, and the mechanisms for collection are statutorily in place.

"Assuming that after his release from prison defendant lacks the financial ability to pay the [fine], defendant will suffer no further incarceration based on this inability to pay. The only detriment defendant will suffer is a possible execution against whatever nonexempt assets he may have to satisfy his delinquent indebtedness to the state. In this respect, defendant does not differ from numerous persons so indebted. Therefore, there is no constitutional infirmity in the imposition by the trial court of a . . . restitution fine on defendant." (*Id.* at p. 828.)

■ Defendant contends that the $10,000 restitution fine was excessive because, among other things, the trial court did not consider his lack of assets and his extremely limited employment potential. Assuming defendant's assertion of lack of assets and limited employment potential to be true, such matters are not germane to the issue. Penal Code section 1202.4 itself provides that "the defendant's present ability to pay" is irrelevant absent "compelling and extraordinary reasons." ■ Although not raised by defendant, this court has held that the foregoing provisions do not violate due process. (*People* v. *Long, supra,* 164 Cal.App.3d 820, 824-827 [210 Cal.Rptr. 745].) Defendant's reliance on cases ordering payment of restitution as a condition of probation is misplaced.

■ Although conceding that some may consider a sale of drugs in any amount to be a serious offense, defendant argues that "in the relative scheme of the criminal justice system, it pales by comparison with other prohibited conduct [such as] murder, rape, sodomy, forced oral copulation, robbery, burglary, [and] assault with a deadly weapon." Since defendant's conduct, "when compared with other forms of prohibited criminal conduct, appears rather insignificant," he argues that the trial court abused its discretion in imposing the maximum possible restitution fine of $10,000.

Government Code section 13967, subdivision (a), provides in pertinent part: "[I]f the person is convicted of one or more felony offenses, the court shall impose a separate and additional restitution fine of not less than one hundred dollars ($100) and not more than ten thousand dollars ($10,000). In setting the amount of the fine for felony convictions, the court shall consider any relevant factors including, but not limited to, the seriousness and gravity of the offense and the circumstances of its commission, any economic gain derived by the defendant as a result of the crime, and the extent to which others suffered losses as a result of the crime."

The quoted language makes it clear that seriousness of the offense is only one of the relevant factors to be considered by the trial court in setting the amount of the fine. In the recent case of *People* v. *Griffin* (1987) 193 Cal.App.3d 739 [238 Cal.Rptr. 371], the defendant was convicted of petty theft with a prior (Pen. Code, § 666) arising from the theft of three cartons of cigarettes valued at $26. The defendant was sentenced to the middle term of two years in prison and ordered to pay a restitution fine of $2,000 pursuant to Government Code section 13967. ██ In holding that the trial court did not abuse its discretion in imposing the restitution fine, we stated: "A fine levied pursuant to Government Code section 13967 is a form of punishment. [Citation.] The trial court has broad discretion in deciding the amount of fine to be imposed and need not provide a statement of reasons on the record. [Citation.] However, the fine must be supported by the record, including those circumstances set forth in the probation officer's report. [Citations.] . . .

"While Government Code section 13967 does not specifically identify the defendant's criminal history as a factor to be considered, it does provide that the court shall consider any relevant factors, including, but not limited to, those factors listed. A defendant's history of criminality is a well-recognized factor to be considered in determining what sentence is to be imposed. (Cal. Rules of Court, rule 421(b)(2).) This court can see no reason in logic why consideration of the defendant's criminal record would constitute an abuse of discretion in the context of imposing a restitution fine, but not in imposing a prison sentence. This is especially true in the context of a Penal Code section 666 violation wherein the seriousness of the offense charged is the fact that the defendant is a recidivist. The trial court did not abuse its discretion in imposing the $2,000 restitution fine." (*People* v. *Griffin, supra,* 193 Cal.App.3d at pp. 741-742, fn. omitted.)

██ In the instant case, defendant was sentenced to prison for the aggravated term of four years, the maximum term provided by law. This sentence was clearly supported, and defendant does not contend to the contrary, by the trial court's finding that the present offense was committed while defendant was on probation for the similar offense of sale of marijuana in violation of Health and Safety Code section 11379, a felony, of which he was convicted on May 29, 1984. The probation report stated that offense involved sales of both marijuana and cocaine and this statement was not contradicted or challenged by defendant at the sentencing hearing. Furthermore, from defendant's statement to Officer Eggert at their meeting on December 31, 1985, it could reasonably be inferred that the instant sale was not an isolated event. When Officer Eggert advised defendant that he wanted to buy a gram of crank, defendant stated he had sold out all his stock but would go to Fresno to get some more. We also note that the probation

officer could find no circumstances in mitigation which would apply either to the crime or to defendant.

■ In our view, when the circumstances of a particular case are such that imposition of the upper term of imprisonment for a particular crime is justified, a trial court does not abuse its discretion in imposing the maximum restitution fine provided by law.

II-V*

. . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Hamlin, Acting P. J., and Thaxter, J.,† concurred.

---

* See footnote, *ante,* page 710.
† Assigned by the Chairperson of the Judicial Council.